IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON N. DUARTE, | No. CIV S-04-0971-MCE-CMK-P |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| DIANE BUTLER, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court is petitioner's petition for a writ of habeas corpus (Doc. 1), filed on May 19, 2004, and respondent's answer (Doc. 5), filed on July 22, 2004.

### I. BACKGROUND

**A.  Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

1

On July 20, 1998, defendant brandished a .22 rifle at several police officers and held them at bay for over one-half hour before being taken into custody. He pleaded no contest to the felony of brandishing a firearm in the presence of police officers. (citations omitted)

At 12:50 a.m. on March 26, 1999, Placer County Sheriff's Deputy Dennis Kemper stopped the defendant in his car on Highway 65 near Sheridan. Deputy Kemper searched the car and found a gray plastic case between the driver's seat and center console. The case contained a small plastic baggie with .16 grams of a white powder, a syringe, and several cotton swabs. The deputy also found a contact lens container with 1.81 grams of a white-yellow granular powder in a fanny pack on the passenger's seat. Both powders contained methamphetamine.

Deputy Kemper testified, as an expert, that the defendant appeared to be under the influence of methamphetamine. The deputy also noticed that defendant appeared to have injection sites on his inner arms. Defendant told the deputy that he had used "a quarter" of "crank" (a quarter gram of methamphetamine) on the prior day at approximately 4:00 a.m. Defendant's urine sample tested positive for methamphetamine and amphetamine.

Defendant was booked into the Placer County jail. During the booking process, defendant admitted to using hypodermic needles. While in jail, defendant wrote a letter to a friend. The letter included the following statement: "I need someone to say it was their ten bag. They will only get probation. My lawyer already said that. I will pay someone $500 to do so. I can't believe my life is only worth $500 or a ten-cent bag. Please ask around. I will be in debt for life."

On January 11, 2000, the People filed an information charging defendant with transportation of methamphetamine (citations omitted), possession fo methamphetamine (citations omitted), possession of a hypodermic needle (citations omitted), being under the influence of methamphetamine (citations omitted), and solicitation to commit a crime (citations omitted). The information also alleged enhancements that defendant had a prior felony conviction for brandishing a firearm at or in front of a police officer (citations omitted) and that the crimes charged in the complaint occurred while the defendant was on bail (citations omitted).

At trial, the defendant testified in his own defense. Defendant claimed that he did not know the drugs were in the car and that he had loaned the car to a friend the day before he was stopped. Defendant admitted that he had used methamphetamine two days prior to his arrest. He admitted the effects from that use could have lasted three days. He claimed that the scratches and scars on his arm were from weed-eating a field of star thistles. Further, he claimed his intent as to the letter to his girlfriend was that she find the person who owned the drugs. He did not want her to find someone to lie for him. Further, he asserted the $500 was for court or attorney fees.

        The People impeached defendant by cross-examining him on his prior felony conviction for brandishing a firearm in the presence of a police officer. The trial court held a side-bar conference which was not reported. After that conference, the following cross-examination took place:

> "Q.    Mr. Duarte, the felony that you pled to in December of '98 was, in fact, the offense of brandishing a firearm at a police officer, correct?
>
> "A.    If it says that there, yes, it was.
>
> "Q.    Well, are you contesting that?
>
> "A.    I haven't seen it on paper, just what my lawyers told me. It was brandishing a firearm in the presence of a law officer."

        Outside the presence of the jury, the trial court stated: "We're supposed to go into whether or not these priors are admissible before . . . we go in front of the jury with them. There's a several step procedure that you go through to see if these things are admissible. [¶] Number one, it has to be an offense involving moral turpitude, which brandishing is. Number two, you go through kind of a [*People v. Beagle* (1976) 6 Cal.3d 441] analysis where it's the four factors. [¶] It's an old case that . . . laid out when these things are admissible. I don't think there's really any argument that this particular felony is admissible for purposes of impeachment." After a short colloquy with counsel, the court stated: "I was a little bit ruffled, I've got to tell you both, because you're supposed to bring these priors up. [¶] Now, it may be that, apparently, you both have stipulated that, you know, the prior can come in approximately the way the District Attorney brought it up, but my point is I need to know about these things in advance." In response, the prosecutor stated: "We've talked about it in the past. We have." The court responded, "Well, okay. It'd help if you let me in on it." The defense attorney replied, "Sorry."

        When the jury returned, the defendant admitted on cross-examination that on December 8, 1998, he had been convicted of the felony offense of "exhibiting a firearm in the presence of a police officer."

        The jury convicted defendant of all counts. The trial court found the enhancements to be true. On June 27, 2000, the trial court sentenced defendant to 10 years in state prison. (footnote omitted).

**B.**    <u>**Procedural History**</u>

        Petitioner's conviction and sentence were affirmed on direct appeal by the California Court of Appeal, which issued a written opinion July 12, 2001. The California

3

Supreme Court denied review without comment on September 26, 2001.

Petitioner's history of state post-conviction proceedings is lengthy. He filed a petition for a writ of habeas corpus in the Placer County Superior Court, which was denied on June 26, 2002. He then filed a habeas petition in the California Court of Appeal, which was denied on June 5, 2003. Next, petitioner filed a habeas petition in the California Supreme Court, which was denied on January 29, 2003. He then filed a second petition in the Placer County Superior Court, which was denied on May 1, 2003. Finally, petitioner filed a second petition in the California Supreme Court, which was denied on April 14, 2004.

## II. STANDARD OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. For instance, when the state court reaches a decision on the merits, but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). Similarly, when it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal

court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where the AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

Under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to

5

determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

A state court decision is reviewed under the far more deferential "unreasonable application" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refused to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

### III. DISCUSSION

Petitioner raises four claims: (1) the trial court erred in admitting evidence of his prior conviction of brandishing a firearm; (2) the prosecutor committed misconduct by not seeking a pre-trial ruling on the admissibility of the prior conviction; (3) his trial counsel

rendered ineffective assistance by failing to object to the admissibility of the prior conviction; and (4) the Placer County Superior Court's denial of his habeas petitions constituted a fundamental miscarriage of justice, thereby violating his due process rights. Respondent concedes these claims are exhausted.

### A. Admission of Evidence

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

In this case, the California Court of Appeal held that the prior conviction for

brandishing a firearm, which arose out of the July 20, 1998, incident, was admissible under California law. Petitioner's instant claim argues only that this determination was wrong as a matter of state law. Therefore, to the extent petitioner challenges the state court's application of state law, no federal habeas relief is available. See Middleton, 768 F.2d at 1085

As to whether petitioner's due process rights were violated by admission of the evidence of the prior conviction for purposes of impeachment, respondent correctly notes that allowing a jury to hear evidence of a defendant's prior crimes does not violate due process where the trial court gives a limiting instruction. See Spencer v. Texas, 385 U.S. 554, 561 (1967); Fritchie v. McCarthy, 664, F.2d 208 (9th Cir. 1981). Here, the trial court gave the following limiting instruction:

> The fact that a witness has been convicted of a felony, if this is a fact, may be considered by you only for the purpose of determining the believability of that witness. [¶] The fact of a conviction does not necessarily destroy or impair a witness's believability. It is one of the factors that you may take into consideration in weighing the testimony of that witness.

In light of this instruction, and considering the rule from Spencer, applying the most favorable standard of review for petitioner – de novo – this court must conclude that no due process violation occurred based on the admission of petitioner's prior conviction for brandishing a firearm.

**B.   Prosecutorial Misconduct**

Success on a claim of prosecutorial misconduct requires a showing that the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. See Greer v. Miller, 483 U.S. 756, 765 (1987). The conduct must be examined to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." United States v. Simtob, 901 F.2d 799, 806 (9th Cir. 1990). Even if an error of constitutional magnitude is determined, such error is considered harmless if the court, after reviewing the entire trial record,

concludes that the alleged error did not have a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993). Error is deemed harmless unless it "is of such a character that its natural effect is to prejudice a litigant's substantial rights." <u>Kotteakos v. United States</u>, 328 U.S. 750, 760-761 (1946). Depending on the case, a prompt and effective admonishment of counsel or curative instruction from the trial judge may effectively "neutralize the damage" from the prosecutor's error. <u>United States v. Weitzenhoff</u>, 35 F.3d 1275, 1291 (9th Cir. 1993) (citing <u>Simtob</u>, 901 F.2d at 806).

Plaintiff asserts that the prosecutor had an obligation to seek justice and that, by not asking for a pre-trial determination on the admissibility of the prior conviction evidence, the prosecutor committed misconduct. As to the prior conviction evidence, the record demonstrates that the prosecutor and defense counsel reached an agreement outside the presence of the jury that the evidence would be admissible to impeach petitioner if he testified. Moreover, admission of evidence of the prior conviction was proper under state law and, in light of the limiting instruction, did not violate due process. Therefore, this court cannot say that there was a violation of constitutional magnitude. Even if there was constitutional error, the only potential damage from admission of the evidence would have been that the jury might have improperly considered the prior conviction. The same limiting instruction cures such potential damage and renders any error harmless. <u>See</u> id.

**C.    Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. <u>See</u> <u>id.</u> at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. <u>See</u> <u>id.</u> at 690. The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were

outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In essentially another attack on the state court's determination that the evidence of the prior conviction was properly admitted, petitioner contends that his trial counsel was ineffective for failing to object to admission of the evidence.  Because the evidence was admissible under state law, it was reasonable that counsel did not object.  For the same reason, there was no prejudice resulting from counsel's failure to object because any such objection would have been properly overruled under state law.  Finally, there can be no prejudice because an appropriate limiting instruction was given.  The state court's denial of this claim for the same reasons is neither "contrary to" nor an "unreasonable application of" federal law.

**D.    Due Process**

In a final wrap-up of petitioner's assertion that the evidence of his prior conviction was not admissible, petitioner contends that the state court's denial of his habeas petition raising

the same argument constituted a fundamental miscarriage of justice thereby violating his due process rights.  Logically, if the state court was correct in denying habeas relief, there could have been no miscarriage of justice.  As discussed above, the evidence was properly admissible under California law.  Therefore, the state court was correct in denying habeas relief on this issue and the instant claim must fail.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus be denied and that judgment be entered accordingly.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 25, 2006.

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE